UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.:

MERCEDES GIBBS

    Plaintiff,
v.

THE CONNOR GROUP, and
WYNDHAM LAKES XIV, LLC,
d/b/a The Villas at Wyndham Lakes

    Defendants.
_____/

## COMPLAINT

Plaintiff, Mercedes Gibbs ("Plaintiff"), by and through undersigned counsel, sues Defendants, The Connor Group, and Wyndham Lakes XIV, LLC, d/b/a The Villas at Wyndham Lakes for injunctive relief and damages pursuant to 42 U.S.C. § 3604 of the Fair Housing Act, as amended ("FHAA") and alleges as follows:

### JURISDICTIONAL ALLEGATIONS

1.    The Court has original jurisdiction pursuant to 42 U.S.C. §1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*, and supplemental jurisdiction under 28 U.S.C. §1367, over Plaintiff's claims under the Broward County Human Rights Act 16½-35.

2.    Venue is proper under 28 U.S.C. § 1391(b) as this is the district in which the events giving rise to Plaintiff's claims occurred, and where the subject property and Defendants reside and/or do business within.

## PARTIES

3. Plaintiff, Mercedes Gibbs (hereinafter "Ms. Gibbs" or "Plaintiff"), is an African American woman and a participant in the Housing Choice Voucher Program ("Section 8"). As such, Ms. Gibbs is a member of a protected class under the Federal Fair Housing Act, entitled to protection from unlawful discrimination based on her race under the Fair Housing Act and source of income under the Broward County Code. Ms. Gibbs resides in Broward County, Florida, and is *sui juris*.

4. Defendant, The Connor Group, is a real estate investment firm that owns and operates luxury apartment communities across the U.S., with its principal place of business in Dayton, Ohio. Defendant, The Connor Group owns and operates The Villas at Wyndham Lakes through its subsidiary, Defendant, Wyndham Lakes XIV, LLC. Defendant, The Connor Group is referred hereinafter as "The Connor Group" or "Defendants", collectively with Defendant, Wyndham Lakes XIV, LLC.

5. Defendant, Wyndham Lakes XIV, LLC, is a foreign limited liability company authorized to and doing business in Florida, that owns and operates "The Villas at Wyndham Lakes" apartments located at 11500 NW 56th Dr, Coral Springs, FL 33076, which is part of The Connor Group portfolio and the subject property. Defendant, Wyndham Lakes XIV, LLC, is referred hereinafter as "Wyndham Lakes" or "Defendants", collectively with Defendant, The Connor Group.

6. This Court has personal jurisdiction over Defendants, The Connor Group and Wyndham Lakes XIV, LLC, pursuant to, inter alia, Florida's long arm statute F.S. § 48.193, in that Defendant: (a) operates, conducts, engages in, and/or carries on a business or business ventures (s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida; (c) was and/or is engaged in substantial and not isolated activity

within Florida; and/or (d) has purposely availed itself of Florida's laws, services and/or benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida.

7. The rental unit at issue is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

## FACTS

8. The federal Housing Choice Voucher program is the federal government's major program for assisting very low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market.

9. Congress established the Housing Choice Voucher program (formerly known as the Section 8 Existing Housing Program) as part of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, Title II, § 201(a), 88 Stat. 633, 662-66, now codified at 42 U.S.C. § 1437f, and Housing Community Development Act of 1987, Pub. L. No. 100-242, § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o); see also 24 C.F.R. §§ 982.1 et seq.

10. The United States Department of Housing and Urban Development ("HUD") provides Housing Choice Voucher program funding to local public housing authorities ("PHAs"), which administer the Housing Choice Voucher program locally and issue vouchers to qualified individuals and families.

11. Participants in the Housing Choice Voucher program use vouchers to find their own housing in the private rental market, including single-family homes, townhouses, and apartments. Participants are free to choose any housing that meets the program's requirements and are not limited to units located in subsidized housing projects. A housing subsidy is paid to the

landlord directly by the PHA on behalf of the participant. The participant then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

12. Florida has a current estimated population of 21,781,128 people. The population is approximately 15.1 percent African American or Black (not Hispanic) and 57.7 percent White (not Hispanic). There are an estimated 7,775,190 households in Florida, which are an estimated 15.8 percent African American or Black (not Hispanic) and 79.0 percent White (not Hispanic).

13. An estimated 198,481 households in Florida currently participate in the Housing Choice Voucher program.

14. In Florida, African American households are overrepresented in the households participating in the Housing Choice Voucher program. Whereas African American/Black households comprise 15.8 percent of all households in Florida, they make up 52.0 percent of Housing Choice Voucher program participants. In contrast, only 26 percent of participating households are White (not Hispanic), although white households comprise 79.0 percent of all households in Florida.

15. In or about January 2024, Plaintiff filled out a form on Apartments.com to schedule a tour (the "Tour") of an available apartment unit at The Villas at Wyndham Lakes (the "Apartment"). The Apartment is located at 11500 NW 56th Dr, Coral Springs, Florida 33076

16. From about January 11, 2024, to January 30, 2024, Defendants contacted Plaintiff *several* times to schedule the Tour, as reflected by the following screenshot:



17. From about January 11, 2024, to January 30, 2024, Defendants also sent Plaintiff *several* text messages confirming the Tour, as reflected by the following screenshots:

**Gibbs v. The Connor Group**
**Complaint for Injunctive Relief**



18. Plaintiff, equally eager to tour the Apartment, specifically set aside time to schedule the Tour.

19. On or about February 2, 2024, Plaintiff arrived at The Villas at Wyndham Lakes and was greeted by someone acting as an agent and/or employee of Defendants (the "Agent").

20. Plaintiff, excited about viewing the Apartment, began to speak to the Agent about the Tour and asked if Defendants accepted Housing Choice Vouchers.

21. The Agent's demeanor immediately changed, and she ordered Plaintiff to stay put

while she attempted to ask a supervisor in the management office (the "Supervisor"). Upon information and belief, the Supervisor is also an agent and/or employee of Defendants.

22. Soon thereafter, the Supervisor spoke with Plaintiff directly and told Plaintiff that Defendants did not accept Housing Choice Vouchers.

23. Plaintiff immediately asked if she was still able to take part in the Tour, which had been scheduled before Plaintiff disclosed her status as a Housing Choice Voucher holder. The Supervisor said no. Plaintiff inquired why, and the Supervisor stated that there were no units available to tour.

24. Plaintiff asked about the Tour, which was previously scheduled with respect to the Apartment. However, the Supervisor replied that if Plaintiff wanted to tour the Apartment, she should go online to their website.

25. Overall, what began as a friendly encounter to tour the Apartment, with both sides equally willing and able to do so, quickly became an unpleasant rejection when Plaintiff disclosed her status as a Housing Choice Voucher holder.

26. Defendants' refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans. Defendants' discriminatory policies also harm the neighborhoods in which African American/Black residents are statistically more likely to live, and impermissibly "red line" those neighborhoods by refusing to accept Housing Choice Vouchers.

27. The pattern and practice of discriminatory conduct, based on source of income, amongst Defendant's agents, was organized and Defendants discriminatory conduct resulted in people who use Section 8 Housing Vouchers having fewer housing choices in one of the least affordable housing markets in the United States.

28.     Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, lost time in travelling to Defendants' property for the Tour, lost time in having to find alternative housing accommodations, and shame and embarrassment from being rejected from rental purely due to status as a Housing Choice Voucher holder.

29.     Any other conditions precedent to the filing of this action have been satisfied or have been waived.

30.     Plaintiff has retained J. Courtney Cunningham, PLLC, to represent her in this action and agreed to pay a reasonable fee for their services.

**COUNT I - VIOLATION OF THE FAIR HOUSING ACT - DISPARATE IMPACT**

31.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-30 as if fully set forth herein.

32.     As set forth above, Defendants' refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans.

33.     As a result, Defendants' practice and/or policy to refuse to accept Housing Choice Vouchers results in a significantly disproportionate impact on the basis of race (for African- American/Black individuals and households).

34.     Defendants' policy and/or practice of refusing to accept Housing Choice Vouchers, if facially neutral, has had and continues to have a discriminatory effect on African-American/Black individuals and households in Florida because these protected groups (*i.e.*, African-American/Black individuals) are disproportionately more likely to participate in the Housing Choice Voucher program as compared to the relevant non-protected groups, whereby refusing to accept Housing Choice Vouchers makes rental housing unavailable to these protected

groups in violation of the Fair Housing Act, 42 U.S.C. § 3604(a). Defendant's refusal to accept Housing Choice Vouchers predictably and disproportionately harms these groups.

35. Defendants' policy and/or practice of refusing to accept Housing Choice Vouchers also predictably or disproportionately harms neighborhoods in Florida where African American/Black households are statistically more likely to live.

36. Defendants' policy and/or practice of refusing to accept Housing Choice Vouchers does not have a substantial, legitimate, nondiscriminatory objective. Even if Defendants frames its discriminatory practice as having some business purpose, other, less discriminatory alternatives are and have been available to Defendants to achieve that objective.

37. Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result. Plaintiff's injuries include, but are not limited to, lost time in travelling to Defendant's property for the Tour, lost time in having to find alternative housing accommodations, and shame and embarrassment from being rejected from rental purely due to status as a Housing Choice Voucher holder.

38. Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

**COUNT II – VIOLATION OF BROWARD COUNTY HUMAN RIGHTS ACT, BROWARD COUNTY CODE SECTION 16 ½ -35**

39. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-30 as if fully set forth herein.

40. Broward County Human Rights Act Section. 16½-35 provides, in pertinent part, that: "[i]t is unlawful for any person, including but not limited to any owner, lessee, lessor, sublessee, sublessor, assignee, assignor, manager, real estate broker, salesperson,

condominium association, homeowners' association, cooperative association, or any representative of any of the foregoing: [t]o refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a dwelling to any person because of a discriminatory classification . . . [or] [t]o represent to any person because of a discriminatory classification that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." Broward County Human Rights Act Section. 16½-35 (emphasis added).

41. Broward County Human Rights Act Section 16½-3 defines "[d]iscriminatory classification" as: "a classification on the basis of race, color, religion, sex, national origin, age, marital status, political affiliation, familial status, disability, sexual orientation, pregnancy, gender identity or expression, veteran or service member status, **lawful source of income**, or because the individual is or has been the victim of dating violence, domestic violence, stalking, or human trafficking." *Id.* (emphasis added).

42. Further, Broward County Human Rights Act Section 16½-3 defines "[l]awful source of income" as "the origin or cause of a legal gain or recurrent benefit, often measured in money or currency, including, but not limited to, income derived from social security, supplemental security income, child support, alimony, veteran's benefits, disability benefits, unemployment, pension and retirement benefits, an annuity, a gift, an inheritance, the sale or pledge of or interest in property, or any form of federal, state, or local public, food, or housing assistance or subsidy, including assistance from the Supplemental Nutrition Assistance Program (SNAP) and **the Housing Choice Voucher Program or "Section 8" vouchers**, whether such income is received directly or indirectly by the renter or purchaser and even if such income includes additional federal, state, or local requirements." *Id.* (emphasis added).

43. As described above, Defendants, by and through the actions and inactions of the Agent and the Supervisor, outright denied Plaintiff from renting the Apartment purely because of Plaintiff's status as a Housing Choice Voucher holder. Further, Defendants, by and through the Supervisor, represented Plaintiff, because of Plaintiff's status as a Housing Choice Voucher Holder, that the Apartment was not available for rental, when the Apartment was in fact so available. The Apartment was so available because of, in part, Defendants' willingness and eagerness to schedule the Tour for the Apartment.

**WHEREFORE**, Plaintiff, Mercedes Gibbs, demands judgment against Defendants, The Connor Group, and Wyndham Lakes XIV, LLC, d/b/a The Villas at Wyndham Lakes, as well as any other owners, agents, or representatives acting in concert with the Defendants' discriminatory actions, and respectfully requests this Court the following:

a. Declare the actions of Defendants complained of herein to be in violation of the Fair Housing Act, and the Broward County Human Rights Act Section 16½-35;

b. Enter a permanent injunction enjoining Defendants, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

c. Enter a permanent injunction compelling Defendants, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

d. Enter a permanent injunction enjoining Defendants, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers;

e. Award compensatory damages to Plaintiff against Defendants as applicable under the Fair Housing Act; and the Broward County Human Rights Act Section 16½-35;

**Gibbs v. The Connor Group**
**Complaint for Injunctive Relief**

  f. Award Plaintiff their costs and reasonable attorneys' fees in this action;

  g. Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

  h. Award Plaintiff any further relief this the Court deems just and proper.

**THE PLAINTIFFS DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.**

Respectfully Submitted this January 31, 2025.

            By: */s/ J. Courtney Cunningham*
            Juan Courtney Cunningham, Esq.
            FBN: 628166
            **J. COURTNEY CUNNINGHAM, PLLC**
            8950 SW 74th Court, Suite 2201
            Miami, Florida 33156
            T:  305-351-2014
            cc@cunninghampllc.com
            legal@cunninghampllc.com

            *Counsel for Plaintiff*