UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-60176-CIV-DIMITROULEAS

MERCEDES GIBBS,

    Plaintiff,

vs.

THE CONNOR GROUP,
Wyndham Lakes XIV, LLC
Doing business as
d/b/a The Villas at Wyndham Lakes,

    Defendant.
_____/

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants, The Connor Group ("The Connor Group") and Windham Lakes XVI, LLC, d/b/a The Villas at Windham Lakes ("Windham Lakes") (collectively, "Defendants")'s Motion to Dismiss the Amended Complaint, filed on March 26, 2025. [DE 13]. The Court has carefully considered the Motion [DE 13], Plaintiff Mercedes Gibbs ("Plaintiff")'s Response [DE 21], Defendants' Reply [DE 25], and is otherwise fully advised in the premises.

    **I.**    **BACKGROUND**

Plaintiff filed a Complaint on January 31, 2025, alleging claims against Defendants for alleged violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq,* and the Broward County Human Rights Act 16½-35. *See* [DE 1]. Defendants filed a Motion to Dismiss. *See* [DE 10]. In response to the Motion to Dismiss, Plaintiff filed an Amended Complaint on March 20, 2025. *See* [DE 11].

The Amended Complaint alleges as follows: Plaintiff is an African American woman residing in Broward County, Florida. [DE 11] at ¶ 3. Plaintiff is a participant in the Housing Choice Voucher Program ("Section 8"). ¶ 3. Defendant The Connor Group is a real estate investment firm with its principal place of business in Dayton, Ohio, owning and operating luxury apartment communities nationwide, including The Villas at Wyndham Lakes through its subsidiary, Wyndham Lakes. ¶ 4. Defendant Wyndham Lakes is a foreign limited liability company authorized and operating in Florida, specifically owning and managing The Villas at Wyndham Lakes, located at 11500 NW 56th Dr, Coral Springs, FL 33076. ¶ 5.

The federal Housing Choice Voucher ("HCV") program (formerly known as the Section 8 Existing Housing Program) is the federal government's major program for assisting very low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market. ¶¶ 8, 9. The United States Department of Housing and Urban Development ("HUD") provides HCV program funding to local public housing authorities ("PHAs"), which administer the HCV program locally and issue vouchers to qualified individuals and families. ¶ 10.

The federal HCV program assists low-income families, elderly individuals, and persons with disabilities to afford safe housing. ¶ 15. Participants use vouchers in the private rental market, with subsidies paid directly to landlords by local Public Housing Authorities ("PHAs"). ¶ 16. Participants in the HCV program use vouchers to find their own housing in the private rental market, including single-family homes, townhouses, and apartments. ¶ 11. Participants are free to choose any housing that meets the program's requirements and are not limited to units located in subsidized housing projects. ¶ 11. A housing subsidy is paid to the landlord directly by the

PHA on behalf of the participant. ¶ 11. The participant then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program. ¶ 11.

Florida has a current estimated population of 21,781,128 people. ¶ 12. The population is approximately 15.1 percent African American or Black (not Hispanic) and 57.7 percent White (not Hispanic). There are an estimated 7,775,190 households in Florida, which are an estimated 15.8 percent African American or Black (not Hispanic) and 79.0 percent White (not Hispanic). An estimated 198,481 households in Florida currently participate in the HCV program. ¶ 13. In Florida, African American households are overrepresented in the households participating in the HCV program. ¶ 14. Whereas African American/Black households comprise 15.1 percent of all households in Florida, they make up 52.0 percent of HCV program participants. ¶ 14. In contrast, only 26 percent of participating households are White (not Hispanic), although white households comprise 79.0 percent of all households in Florida. ¶ 14.

In January 2024, Plaintiff scheduled a tour of an apartment unit at The Villas at Wyndham Lakes via Apartments.com. ¶ 17. Between January 11 and January 30, 2024, Defendants communicated several times with Plaintiff via phone and text, confirming her scheduled tour. ¶ 18. On February 2, 2024, Plaintiff arrived for her scheduled tour and inquired whether Defendants accepted Housing Choice Vouchers. ¶ 19. Immediately upon hearing Plaintiff's question, Defendants' agent exhibited a noticeable change in demeanor, stating that she would consult a supervisor. ¶ 19.

Defendants' supervisor subsequently informed Plaintiff that Defendants did not accept Housing Choice Vouchers and refused Plaintiff's previously scheduled tour, claiming suddenly no units were available despite prior communications confirming availability. ¶ 20. Defendants'

abrupt cancellation of the tour and stated policy of refusing to accept HCVs effectively denied Plaintiff housing based on her voucher status, causing significant embarrassment, emotional distress, and inconvenience. ¶ 21. Defendants' policy of not accepting HCVs perpetuates racial segregation by restricting housing availability and choices for voucher holders in predominantly white and higher-income communities, such as Coral Springs, thus significantly impacting community integration and diversity. ¶ 22. Defendants' policy of not accepting HCVs resulted in people who use Section 8 Housing Vouchers having fewer housing choices in one of the least affordable housing markets in the United States. ¶ 25.

In her two-count First Amended Complaint, Plaintiff claims as follows: Count I – Violation of the Fair Housing Act; and Count II – Violation of Broward County Human Rights Action, Section 16 ½-35.

Defendants move to dismiss the FHA disparate impact claim for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). Defendants also request that the Court decline to exercise supplemental or pendant jurisdiction over the Broward Code claim. *See id,* For the reasons explained below, the Court **GRANTS** Defendants' Motion.

**II. Standard of Review**

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

"A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (*quoting St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). However, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims," *id.* (*citing Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

**III.    Discussion**

A.  Count I – Violation of the Fair Housing Act

This case presents a question of whether a property owner's policy of not accepting HCV vouchers is a sufficient basis for a disparate impact claim under the FHA. The Court, having carefully considered the arguments and authority presented by both sides, holds that it is not. "The voluntary nature of Section 8 dictates the same result in the case at bar: refusal to accept Section 8 vouchers or withdrawal from Section 8, standing alone, is insufficient to establish a

prima facie case of discrimination." *Graoch Assocs. # 33 Ltd. P'ship v. Louisville & Jefferson Cnty. Metro Hum. Rels. Comm'n*, 430 F. Supp. 2d 676, 680 (W.D. Ky. 2006), *aff'd on other grounds sub nom. Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366 (6th Cir. 2007).

Moreover, even if a property owner's refusal to accept HCVs could support an FHA disparate impact claim, Plaintiff's claim here still fails because the First Amended Complaint does not allege sufficient facts demonstrating that such policy *caused* the statistical disparity. "[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies **causing that disparity**. A robust causality requirement ensures that "[r]acial imbalance ... does not, without more, establish a *prima facie* case of disparate impact" and thus protects defendants from being held liable for racial disparities they did not create. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) (emphasis added). It is insufficient for an FHA disparate impact claim to show merely that "a policy impacted more members of a protected class than nonmembers of protected classes." *Oviedo Town Ctr. II, L.L.P. v. City of Oviedo, Fla.*, 759 Fed. Appx. 828, 834 (11th Cir. 2018). *See also Smith v. Sunset Trails Homeowners Ass'n, Inc.*, No. 24-61111-AHS [DE 23] at p. 6 (S.D. Fla. Dec. 19, 2024) (Plaintiff "claims that the Association's alleged policy of not accepting tenants with housing vouchers has a disparate impact on African American/ Black applicants because voucher holders are disproportionately African American/Black. The Association correctly argues that this fails to establish a cognizable claim for FHA disparate impact.") (dismissing with prejudice FHA disparate impact claim based on policy of not approving HCV holders' applications).

B.  *Count II – Violation of Broward County Human Rights Action, Section 16 ½-35*

Because the only claim that remains in this action, the claim for violation of Broward County Code section 16 ½-35, is a state law claim, Defendants urge the Court to decline to exercise supplemental jurisdiction and dismiss the claim without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when "all other claims over which it has original jurisdiction" have been dismissed. *Blakenship v. Gulf Power Co.*, 551 F. App'x 468, 470 (11th Cir. 2013). A district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. *See Arnold v. Tuskegee Univ.,* 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir. 2004) (The Eleventh Circuit "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial"); *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 428 (11th Cir. 1984) ("if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."); *Hinkle v. Asset Acceptance, LLC,* Case No. 09–60928–CIV, 2010 WL 298396, at *1 (S.D.Fla. Jan. 20, 2010) (declining to exercise supplemental jurisdiction over the FCCPA claim after disposing of the FDCPA on summary judgment). This is especially true when the federal claims are dismissed before trial, because considerations of "judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349 n.7 (1988). Under these circumstances, the Court declines to exercise

its supplemental jurisdiction over the remaining state law claims. As such, Plaintiff's state law claim is dismissed without prejudice. Plaintiff may pursue her state law claim in state court.[1]

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss the Amended Complaint [DE 13] is **GRANTED**.
2. Count I, Plaintiff's claim under the FHA, is **DISMISSED WITH PREJUDICE.**
3. The Court exercises its discretion under 28 U.S.C. § 1367(c)(3) to decline supplemental jurisdiction over the remaining Florida state law claim (Count II). This claim is **DISMISSED WITHOUT PREJUDICE**.
4. The Clerk shall **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 27th day of May, 2025.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished:

Counsel of Record

---

[1] The Court notes that the statute of limitations period applicable to any of Plaintiff's state law claims is "tolled while the claim is pending [before this Court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).